UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BRYAN COLT TODD #83207/239871 | CIVIL ACTION NO. 19-cv-0736 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CEDRIC FORD, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Bryan Colt Todd ("Plaintiff"), a self-represented pretrial detainee at the Caddo Correctional Center ("CCC"), alleges that Deputy Edric Ford subjected him to excessive force by use of a taser. Plaintiff also asserted claims against Commander Bobby Wyche for failure to train and to supervise, and he named the Caddo Parish Sheriff's Department as a defendant. Before the court is a Motion for Summary Judgment (Doc. 29) filed by Defendants. The motion was noticed for briefing, but Plaintiff has not filed any response. For the reasons that follow, it is recommended that the motion be granted and all claims against Defendants be dismissed.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict

for either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).  If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

A summary judgment challenge requires one to go beyond his complaint and present competent summary judgment evidence, but a summary of the allegations in the complaint is useful as a background for the dispute.  Plaintiff alleged in his complaint that he was a pretrial detainee on December 29, 2018 when Deputy Edric Ford shot him in the lower back area with a taser "after I was already laying on the ground, face down with my hands behind my back in a non-threatening/non-resisting manner!"  Plaintiff alleged that the pain of the shock and the puncture of the barbed prongs was severe and intense.  He alleged that Deputy Ford then escorted him to the infirmary, "where Dep. Ford forcibly ripped out the barbed prongs, jerking them out by the wires."  Plaintiff alleged that the puncture sites bled for several days and were bruised and sore.  He denied that there was any need or cause for Ford to apply the force.  Commander Wyche is alleged to have failed in his duties to properly train and supervise Deputy Ford.  Plaintiff seeks compensatory, nominal, and

punitive damages. He asks that Deputy Ford be suspended without pay for seven days, retrained in the proper use of a taser, and required to tender a written apology.

Deputy Ford testifies in an affidavit that he has been a deputy at CCC for more than nine years, and he was selected for the Emergency Response Team ("ERT") approximately seven years ago. Ford testifies that he is familiar with Plaintiff and has responded to requests from other officers for assistance in controlling Plaintiff. He received such a call on December 29, 2018 when ERT was called to a housing unit. Upon arrival, Ford saw Plaintiff "confronting and attempting to attack other inmates," and Plaintiff was "standing in a combative position, fists clenched, with no wrist or leg restraints."

Deputy Ford testifies that ERT members are taught that the safest way to control an inmate is to place him on the ground as quickly as possible. Inmates are also taught to get on the ground whenever ERT responds. Ford saw another member of the ERT grab Plaintiff's jumpsuit and torso in an attempt to place Plaintiff on the ground, but Plaintiff resisted and was able to separate himself from the deputy. Plaintiff was given loud verbal commands to get on the ground and put his hands behind his back, but he refused to comply. Ford testifies that he then withdrew his taser from the holster and discharged it, one burst, on Plaintiff's lower back.

Ford testifies that the force used was exercised to gain compliance and place Plaintiff in handcuffs. "No force was used after he was handcuffed." Ford states that he acted in accordance with the sheriff's policy on the use of a taser, on which he has been trained. A copy of the policy is attached to his affidavit. He adds that it is policy to have medical personnel remove the taser prongs and, once compliance was gained, Plaintiff

"was escorted to Medical, where he was cleared." He does not specifically say whether it was himself or medical staff who removed the prongs.

Deputy Ford also submitted a three-minute video recording from inside a CCC housing unit with a date stamp and time consistent with reports of the incident. There is no accompanying audio, and the application of the taser apparently happened in the area below the camera so that it is out of view. But what can be seen in the minutes leading up to the use of force supports Deputy Ford's testimony.

The video depicts several inmates sitting at tables and chairs in the common area of the housing unit. One inmate, presumably Plaintiff, is inside a cell, with the door open, and a female officer is standing outside. The inmate quickly exits the cell and approaches the officer in what appears to be a hostile manner. She appears to reach for her radio and attempt to gain control of the inmate, who responds aggressively. The officer backs away, and several inmates approach Plaintiff in an apparent attempt to assist the officer. One responding inmate punches Plaintiff, and it appears that Plaintiff throws one of his shoes at the officer and slings the other shoe across the room. One inmate attempts to shield the officer while others confront Plaintiff, who eventually runs across the unit to a point beneath the camera and out of video range. At this point, the ERT unit apparently enters, because the other inmates simultaneously take a seat in a chair or get on the floor. About a minute later, the other inmates are allowed to resume their activities.

**Excessive Force**

Deputy Ford argues that he is entitled to summary judgment on the merits and based on a qualified immunity defense. Government officials "are entitled to qualified immunity

… unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. District of Columbia v. Wesby, 138 S.Ct. 577, 589 (2018) (internal quotation marks omitted). The claims of a pretrial detainee are governed by the Due Process Clause, rather than the Eighth Amendment that applies to claims by convicted prisoners. "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015). Objective reasonableness turns on the facts and circumstances of each particular case, and a court must make the determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. Id.

A non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

The uncontested summary judgment evidence presented by Deputy Ford defeats Plaintiff's claim of excessive force. That evidence shows that there was an out-of-control situation in the housing unit involving violence among inmates and violence by Plaintiff directed at an officer. Deputy Ford testified that loud orders and even an attempt to take Plaintiff to the ground were unsuccessful, leading to the use of the taser to gain control of the situation. Plaintiff's medical records were not presented, but there is no indication that

Plaintiff's injury from the prongs was any more severe than what would be expected, and the evidence does show that Plaintiff was promptly taken to the medical department and cleared. Gauging the situation from the perspective of a reasonable officer on the scene, the use of force was not objectively unreasonable in these circumstances. See Tennyson v. Villarreal, 801 Fed. Appx. 295 (5th Cir. 2020) (reversing denial of summary judgment for officers who took a noncompliant pretrial detainee to the ground in order to handcuff him behind his back). Deputy Ford is entitled to both qualified immunity and summary judgment on the merits.

**Supervisors**

Plaintiff named as a defendant the Caddo Parish Sheriff's Department, but that is not a legal entity capable of being sued. It is the sheriff, not a sheriff's office or sheriff's department, that is the proper legal entity for suit. See Cozzo v. Tangipahoa Parish Council- President Government, 279 F.3d 273, 283 (5th Cir. 2002).

Sheriff Prator, implicitly acknowledging that he is the appropriate defendant, answered the complaint and joined the motion for summary judgment, together with CCC Commander Wyche. Neither man is alleged to have been personally involved in the use of force. Plaintiff only alleges failure to train or supervise. Supervisors may be held liable under § 1983 in limited circumstances such as failure to train, but "an underlying constitutional violation is required to impose liability on the governmental body or supervisory liability on" a sheriff or other supervisor. Baughman v. Hickman, 935 F.3d 302, 311 (5th Cir. 2019). See also City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986) (a finding that police officer did not inflict constitutional injury on plaintiff removed any basis

for liability against city and members of police commission).  It was determined above that Deputy Ford is entitled to summary judgment on the merits because Plaintiff is unable to establish a genuine issue of material fact with respect to a constitutional claim against him. Sheriff Prator and Commander Wyche are, therefore, also entitled to summary judgment.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 29) be granted and that all claims against all defendants be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of July, 2020.



Mark L. Hornsby
U.S. Magistrate Judge